DECISION IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} In this original action, relator, Agymah Shabazz, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's request for temporary total disability ("TTD") compensation on the basis that relator had voluntarily abandoned his former position of employment, and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court grant a limited writ of mandamus remanding the matter to the commission with instructions to consider whether there is a causal connection between relator's actions, which led to his termination and his subsequent injuries, and to enable a determination of whether or not he voluntarily abandoned his employment with respondent, Nordstrom, Inc. ("Nordstrom"). The commission, respondent Nordstrom, and relator have all filed objections to the magistrate's decision. The commission[1] sets forth the following objection:
 THE MAGISTRATE ERRED BY FINDING THAT THE COMMISSION SHOULD APPLY THE HOLDING AND RATIONALE IN PRETTY PRODUCTS.
 {¶ 3} Relator's objection is as follows:
 THE MAGISTRATE ERRED IN FINDING NORDSTROM HAD ESTABLISHED THAT RELATOR VIOLATED A WRITTEN WORK RULE.
 {¶ 4} The magistrate made detailed findings of fact, and we adopt those findings as our own. Nonetheless, a brief recitation of the relevant facts is necessary for our analysis. Relator was employed as a salesperson at Nordstrom's in the women's shoe department. A dispute arose between relator and another co-worker. The exchange escalated and the co-worker shoved relator, who fell backwards into shoe boxes. Both employees were suspended pending further investigation, and subsequently terminated for having violated a written work rule. Relator filed a workers' compensation claim that was initially allowed for specified conditions. On appeal, the staff hearing officer ("SHO") determined that TTD compensation was not payable on the basis that relator voluntarily abandoned his employment as he was terminated for violating a written work rule. After further appeals were denied, the mandamus action in this court followed.
 {¶ 5} In her conclusions of law, the magistrate correctly set out the standards that we must use to determine whether to issue a writ in this case, and we also adopt those conclusions as our own.
 {¶ 6} For ease of discussion, we will address relator's objection first. Relator contends the magistrate erred in finding that relator violated a written work rule because there is no evidence in the stipulated record that he violated such rule. We do not find relator's position well-taken. All of the arguments contained within relator's objection are the same, or similar, to those made to the magistrate. The record supports the determination that relator violated a written work rule, which clearly defined the prohibited conduct, was identified as a dischargeable offense, and which relator knew or should have known could result in termination. The commission clearly had some evidence before it from which it could conclude that relator's termination from his employment was voluntary under State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401, and, as a result, relator was not entitled to TTD compensation. Consequently, we adopt the portion of the magistrate's decision that holds the same, and overrule relator's objection to the magistrate's decision.
 {¶ 7} The commission and Nordstrom object to the magistrate's decision arguing that while the magistrate was correct in her conclusion that relator voluntarily abandoned his employment with Nordstrom, she incorrectly determined that the commission should apply the holding and rationale of Pretty Products v. Indus. Comm., 77 Ohio St.3d 5,1996-Ohio-132. The commission's objections are twofold: (1) PrettyProducts is not applicable here because there is no evidence that relator's prohibited conduct was due to his industrial injury; and (2) the magistrate raised and addressed an issue not raised by relator.
 {¶ 8} A review of the record reveals no references to PrettyProducts or its rationale. However, even if the magistrate erroneously construed relator's argument as one based in the doctrine of PrettyProducts, we find that Pretty Products is not applicable here.
 {¶ 9} It is well-established that a voluntary departure from employment generally bars TTD compensation, and an involuntary departure does not. It is equally well-established that a discharge from employment may be "voluntary" in some circumstances. State ex rel. Wattsv. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. In State exrel. Louisiana-Pacific, the Supreme Court of Ohio stated that, when a worker has been discharged for violating a rule, the commission may conclude that the discharge constituted a voluntary relinquishment of employment where: (1) the employer's rule or policy defined the prohibited conduct clearly in writing; (2) the rule or policy identified the violation as a dischargeable offense; and (3) the worker knew, or should have known, both the rule and the consequences of violating the rule or policy. Where a claimant has voluntarily relinquished his or her job, either by resigning or by abandoning it underLouisiana-Pacific, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. See, e.g., State ex rel. McKnabbv. Indus. Comm. (2001), 92 Ohio St.3d 559.
 {¶ 10} The Supreme Court has cautioned, "a postinjury firing must be carefully scrutinized." McKnabb, at 562. Cf. State ex rel. Daniels v.Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626. The court also has emphasized the "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." State exrel. Smith v. Superior's Brand Meats, Inc. (1996), 76 Ohio St.3d 408,411.
 {¶ 11} In State ex rel. Smith v. Yellow Freight, Franklin App. No. 05AP-729, 2006- Ohio-5086, this court recently reviewed the PrettyProducts doctrine. In Yellow Freight, this court stated:
 In Pretty Products, the issue was whether the claimant voluntarily abandoned her employment in failing to abide by the employer's work rules that required submission of an excuse slip for absences. The Supreme Court of Ohio, being unable to determine the commission's reasoning for granting TTD, remanded the matter to the commission for further consideration. Essentially, it was not possible for the court to determine whether the claimant's discharge was due to a violation of a work rule, or was due to the claimant's injury itself, which would render the termination an involuntary abandonment of her employment.
 The key distinction in Pretty Products, however, was that the claimant had been receiving TTD prior to the forbidden conduct of having unexcused absences from work. The last of the medical slips certified that the claimant could return to work on March 1, 1991. The claimant neither returned to work on March 1, 1991, nor did she produce an excuse slip that extended her disability. Consequently, she was terminated from her employment. The court explained that unlike the factual scenario in Louisiana-Pacific, in which the court found there was "no evidence that the claimant's absences were due to industrial injury," in Pretty Products there was. In other words, in Pretty Products, the forbidden conduct, i.e., the unexcused absences, were possibly related to the injury for which the claimant had been receiving TTD.
Id. at ¶ 11-12.
 {¶ 12} In the case sub judice, there is no evidence that relator's conduct, i.e., that which was prohibited in the employee handbook, was due to his industrial injury or that he was terminated because of his injury. Applying Pretty Products to the case at bar, where claimant's conduct resulting in his termination, occurred prior to, and simultaneous with the injury, would emasculate Pretty Products' intended purpose. Accordingly, we sustain the objection of the commission and Nordstrom.
 {¶ 13} For the foregoing reasons, relator's objection to the magistrate's decision is overruled and respondents' objection to the magistrate's decision is sustained, and the requested writ of mandamus is denied.
Relator's objection overruled; Respondents' objections sustained; writof mandamus denied.
KLATT, P.J., and FRENCH, J., concur.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 14} Relator, Agymah Shabazz, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation on the grounds that he had voluntarily abandoned his former position of employment and ordering the commission to find that he is entitled to that compensation. Findings of Fact:
 {¶ 15} 1. On July 31, 2005, relator was employed as a salesperson at Nordstrom, Inc. ("Nordstrom"), working in the women's shoe department.
 {¶ 16} 2. On that date, relator was involved in a dispute with a co-worker, Robert Quetrell ("Quetrell"), who was working as a cashier. The dispute involved servicing customers.
 {¶ 17} 3. It is undisputed that the verbal exchange escalated and that ultimately Quetrell shoved relator, who fell backwards into shoe boxes.
 {¶ 18} 4. Both relator and Quetrell were suspended pending further investigation of the incident.
 {¶ 19} 5. On the same day, relator called the police to file a complaint against Quetrell.
 {¶ 20} 6. On August 2, 2005, both relator and Quetrell were terminated from their employment with Nordstrom for having violated a written work rule indicating that the failure of employees to use good judgment in keeping the workplace free from violence may result in disciplinary action up to and including termination of employment.
 {¶ 21} 7. Relator filed a workers' compensation claim, which was contested by Nordstrom.
 {¶ 22} 8. Relator's claim was ultimately allowed for the following conditions: "sprain to neck, right shoulder, left ankle and lumbosacral." Specifically, the com-mission determined that Nordstrom's contention that relator's conduct was the instigating threat was not substantiated by the record. Furthermore, based upon the report of relator's treating physician, Cyril E. Marshall, M.D., the commission awarded TTD compensation from August 4, 2005 and continuing based upon the submission of medical evidence.
 {¶ 23} 9. Nordstrom appealed and argued that relator had voluntary abandoned his employment by violating a written work rule which clearly defined the prohibited conduct, had been identified as a dischargeable offense, and which relator knew or should have known. The handbook provided, in pertinent part:
 As part of our goal to provide a safe environment for our employees and customers, Nordstrom absolutely prohibits any kind of threats or acts of violence in the workplace. * * *
 * * *
 We hold you accountable for your actions. Failure to use good judgment in keeping our workplace free from violence may result in disciplinary action up to and including termination of employment.
 {¶ 24} 10. Nordstrom also submitted statements from other employees con-cerning relator's combative behavior in the workplace in an effort to demonstrate that relator was the instigator of the dispute and, as such, that relator should not be compensated for any injuries.
 {¶ 25} 11. Nordstrom's appeal was heard before a staff hearing officer ("SHO") on January 4, 2006. The SHO agreed that relator had a compensable work-related injury and also determined that, based upon the testimony, it was impossible to determine whether relator or Quetrell was the instigator of the altercation. The SHO determined that the altercation appeared to have arisen as a result of actions on the part of both employees. With regards to Nordstrom's argument that relator should not be entitled to TTD compensation on the basis that relator had voluntarily abandoned his employment, the SHO determined that Nordstrom's argument had merit. In denying relator TTD compensation, the SHO stated:
 * * * The Staff Hearing Officer finds that temporary total compensation is not payable in this claim for the reason that the injured worker voluntarily abandoned his former position of employment and has not returned to the work force. Following this incident, the injured worker was terminated for violation of the employer's written work rule which said that failure to use good judgement in keeping the work place free from violence can result in termination. The Staff Hearing Officer finds, based on the testimony of Mr. Logsdon, that the employee's handbook has been furnished to the injured worker and he was, therefore, on notice that violation of the rule could lead to termination. * * *
 {¶ 26} 12. Nordstrom's appeal was refused by order of the commission mailed January 28, 2006, and relator's appeal was refused by order of the commission mailed February 4, 2006.
 {¶ 27} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 29} In this mandamus action, although not well articulated, relator argues that the injuries he sustained are causally related to the actions which led to his termination and that the commission abused its discretion by determining that his departure from his employment was voluntary and precluded the payment of TTD compensation. For the reasons that follow, it is this magistrate's decision that this court should issue a limited writ of mandamus remanding this matter to the commission to determine whether or not relator's injuries are causally related to the actions which resulted in his termination.
 {¶ 30} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. However, where a claimant has voluntarily relinquished his or her job, either by resigning or otherwise abandoning it, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI"). See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 31} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the Supreme Court of Ohio stated that, when a worker has been discharged for violating a rule, the commission may conclude that the discharge constituted a voluntary relinquishment of employment where: (1) the employer's rule or policy defined the prohibited conduct clearly in writing; (2) the rule or policy identified the violation as a dischargeable offense; and (3) the worker knew, or should have known, both the rule and the consequence of violating the rule or policy.
 {¶ 32} However, the Supreme Court of Ohio has explained that, where the conduct is causally related to the injury, the termination of employment is not voluntary. State ex rel. Pretty Products, Inc. v.Indus. Comm. (1996), 77 Ohio St.3d 5. Rather, the court directed that the commission must examine the underlying facts and circumstances of each case to determine whether a departure by firing is voluntary or involuntary. The court has cautioned that a post-injury firing must be carefully scrutinized. See State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559.
 {¶ 33} In the present case, Nordstrom has established that relator violated a written work rule which clearly defined the prohibited conduct, was identified as a dischargeable offense, and which relator knew or should have known could result in termination. Based upon Nordstrom's evidence, the commission determined relator's termination from his employment was "voluntary" and, as a result, relator was not entitled to TTD compensation. However, the commission failed to examine and determine whether relator's actions are causally related to the injury. Because the language from Pretty Products has been broadly interpreted, the commission must address this issue and make that determination before the commission determines whether or not relator is entitled to TTD compensation.
 {¶ 34} Based on the foregoing, it is this magistrate's conclusion that this court should issue a limited writ of mandamus in this case remanding the matter to the commission with instructions to consider whether there is a causal connection between relator's actions which led to his termination and his subsequent injuries to determine whether or not he voluntarily abandoned his employment with Nordstrom, Inc.
[1] In its objections, Nordstrom referred to the objections filed by the commission.