THE STATE EX REL. LUTHER, APPELLEE AND CROSS-APPELLANT, *v.* FORD MOTOR COMPANY, BATAVIA TRANSMISSION PLANT, APPELLEE; INDUSTRIAL COMMISSION OF OHIO, APPELLANT AND CROSS-APPELLEE.

[Cite as *State ex rel. Luther v. Ford Motor Co., Batavia Transmission Plant,* 113 Ohio St.3d 144, 2007-Ohio-1250.]

(No. 2006–0462—Submitted January 9, 2007—Decided April 4, 2007.)

**Per Curiam.**

{¶ 1} The facts in this temporary total disability case are complex. At issue is the eligibility of appellee and cross-appellant, Jeffrey Luther, for temporary total disability compensation after December 9, 2001. Upon review, we affirm the judgment of the court of appeals, albeit for different reasons, and order a return of the cause to the commission for further consideration and an amended order.

{¶ 2} Luther was an electrician at appellee Ford Motor Company's Batavia, Ohio plant. On January 25, 1991, he hurt his back, and a workers' compensation claim was allowed. His condition progressively worsened, and, after a second

surgery in late 1998, he was restricted to light duty by attending physician Stephen D. Heis. Dr. Heis never lifted those restrictions and never released Luther to return to his electrician job.

{¶ 3} After surgical recuperation, Luther returned to a light-duty job at Ford. At some point in 2000 or 2001, however, Ford sold its Batavia plant. Luther was transferred to Ford's Sharonville facility but no light-duty was—or ever became—available. Consequently, Luther has not worked since. Dr. Heis continued to certify Luther as medically incapable of returning as an electrician, and appellant and cross-appellee, Industrial Commission of Ohio, awarded temporary total disability compensation from June 28, 2000, through December 9, 2001, and to continue upon submission of medical proof.

{¶ 4} For the next nine months, self-insured Ford received no further medical information. The reason for this is not apparent from the record, since Luther continued to see Dr. Heis every month. Dr. Heis documented considerable ongoing back problems and a lack of pain relief. He also prepared a March 14, 2002 C–84 Physician's Report Supplemental that certified temporary total disability through June 10, 2002. Again, however, Ford did not immediately receive that report.

{¶ 5} On August 22, 2002, Ford received a C–84 of the same date that certified temporary total disability through October 15, 2002. Ford, on September 6, 2002, notified Luther's union representative that it had received the C–84 and was forwarding it to Ford's legal counsel. Counsel then informed Luther's union representative that Ford would request a commission hearing, given the nine-month gap in submitting medical evidence. A complaint against Ford by Luther for failure to pay compensation in an allowed claim was ultimately found invalid after the Bureau of Workers' Compensation agreed that the gap entitled Ford to a hearing on further temporary total disability compensation.

{¶ 6} Luther formally moved for temporary total disability compensation on November 22, 2002. The motion was accompanied by the August 22, 2002 C–84 as well as a new October 10, 2002 C–84 that extended temporary total disability through December 15, 2002. Four days later, Dr. Heis's office notes from November 29, 2001, through October 21, 2002, were submitted to a union representative.

{¶ 7} Luther continued to see Dr. Heis on a monthly basis with no improvement documented. Again, however, no contemporaneous C–84 was prepared or submitted. Moreover, between November 18, 2002, and December 19, 2003, Luther, without explanation, skipped medical examinations scheduled by Ford. As a result, the commission temporarily suspended all activity in his claim. During part of this time, Ford also placed Luther under surveillance, but no activities of clear significance were observed.

{¶ 8} On May 9, 2003, pursuant to Section 5 of the collective bargaining agreement between Ford and the United Auto Workers ("UAW"), Ford sent a certified letter to Luther informing him that his conditional sick leave had expired on December 15, 2002, and that he had five working days to either return to work or submit medical information to Ford regarding his medical condition. The letter clearly informed Luther that failure to do so would result in termination. For reasons unknown, Luther—despite acknowledged receipt of the letter—never responded. On May 19, 2003, he was terminated. Two weeks later, Luther finally reported for a rescheduled medical examination.

{¶ 9} On September 5, 2003, Luther moved for temporary total disability compensation from December 9, 2001, forward. Added to three previous C–84s was a new one dated August 20, 2003, certifying temporary total disability through that date. A September 11, 2003 C–84 was later filed that extended disability to December 15, 2003.

{¶ 10} On February 18, 2004, after a hearing, a commission district hearing officer ordered temporary total disability compensation from December 9, 2001, through December 15, 2003, and to continue upon submission of medical proof. Ford does not dispute Luther's assertion that Ford never mentioned Luther's discharge at this hearing.

{¶ 11} A staff hearing officer vacated that order on April 20, 2004. The staff hearing officer awarded temporary total disability compensation from December 9, 2001, through May 19, 2003, but denied further compensation thereafter based on what it found to be Luther's voluntary abandonment of employment. In making that finding, the staff hearing officer relied on *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469.

{¶ 12} After further appeal was refused, Luther initiated a mandamus action in the Court of Appeals for Franklin County. He alleged that the commission had abused its discretion in classifying his dismissal as a voluntary departure from the workplace. Luther argued that he was already disabled when fired and could not be deemed to have voluntarily relinquished his job. He also claimed that the absenteeism for which he was terminated was due to his industrial injury and that this fact compelled a finding that his employment separation was involuntary.

{¶ 13} The court of appeals, particularly in light of Luther's second proposition, found that the commission's analysis was incomplete. Relying on *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, it returned the cause to the commission for further consideration and an amended order.

{¶ 14} Both Luther and the commission now appeal to this court as of right.

{¶ 15} Again at issue is the effect of an employment dismissal on a claimant's eligibility for future temporary total disability compensation. Employment discharge may be deemed a voluntary separation from employment that precludes temporary total disability compensation because "[a]lthough not generally consented to, discharge * * * is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character." *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202. There is, however, a "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. * * * [It is therefore] imperative to carefully examine the totality of the circumstances when such a situation exists." *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 411, 667 N.E.2d 1217.

{¶ 16} The commission's analysis was based solely on *Louisiana–Pacific*, which characterized as voluntary a termination "generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." 72 Ohio St.3d at 403, 650 N.E.2d 469. The parties agree that the *Louisiana–Pacific* test was met in this case. The debate is whether that alone can sustain the commission's denial of compensation. The court of appeals held that it could not, relying on *Coolidge*, 100 Ohio St.3d 141, 144, 2003-Ohio-5357, 797 N.E.2d 61. We agree with that ruling, but clarify that it is *State ex rel. Pretty Prods., Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466, that is controlling, not *Coolidge*.

{¶ 17} *Pretty Prods.* incorporates two important principles. First, it reaffirmed that if a claimant was already disabled when employment separation occurred, temporary total disability compensation was not foreclosed. 77 Ohio St.3d at 7, 670 N.E.2d 466. See, also, *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 623 N.E.2d 55. Second, it observed that not all cases falling within the parameters of *Louisiana–Pacific* are the same. Where the infraction that precipitated discharge is potentially due to industrial injury, further inquiry is necessary. 77 Ohio St.3d at 7–8, 670 N.E.2d 466.

{¶ 18} Luther raises both of these issues in his cross-appeal. He asserts that he was already disabled when fired. He also contends that, as alleged in *Pretty Prods.*, he was fired for absenteeism that was induced by his industrial injury. The commission did not address either of these matters in its orders, and in returning the cause to the commission, we give it the opportunity to do so.

{¶ 19} Finally, anticipating the possibility of a return for additional inquiry, the parties have asked us to specify a compensation termination date should the commission again conclude that Luther voluntarily abandoned his former job. We decline this invitation, finding that the matter more appropriately rests within

the sound discretion of the commission. We have consistently held that temporary total disability compensation cannot be paid after a claimant has voluntarily abandoned the former position of employment, unless the claimant becomes reemployed and the allowed condition again prevents the claimant from performing the work at his or her new job. *State ex rel. Marion Cty. N. Cent. Ohio Rehab Ctr. v. Indus. Comm.*, 105 Ohio St.3d 369, 2005-Ohio-2164, 826 N.E.2d 829. In this case, however, it appears that the approximately seven months of additional compensation that Luther received was due solely to Ford's delay in raising the termination issue administratively. We thus leave it to the commission to decide whether a declaration of overpayment is appropriate under these circumstances should it once again find a voluntary abandonment.

{¶ 20} The judgment of the court of appeals is affirmed. We hereby issue a limited writ returning the cause to the commission for further consideration consistent with this decision and with an amended order to follow.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

---

Clements, Mahin & Cohen Co., L.P.A., and William E. Clements, for appellee and cross-appellant, Jeffrey Luther.

Taft, Stettinius & Hollister, L.L.P., and Cynthia C. Felson, for appellee Ford Motor Company.

Marc Dann, Attorney General, and Sue A. Zollinger and Elise Porter, Assistant Attorneys General, for appellant and cross-appellee, Industrial Commission.

Philip J. Fulton Law Office, Philip J. Fulton, and William A. Thorman III, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.