DECISION
{¶ 1} Relator, Ervin N. Brown, filed this original action, which requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order to the extent it denies temporary total disability ("TTD") compensation *Page 2 
after June 5, 2006, on grounds that relator voluntarily abandoned his employment with respondent, TS Trim Industries, Inc. ("employer"), and to enter an order finding that relator did not abandon his employment and awarding TTD compensation after June 5, 2006.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ of mandamus ordering the commission to vacate its order to the extent that it finds relator ineligible for TTD compensation after June 5, 2006, and to enter an amended order that determines relator's eligibility after addressing the critical issues under State ex rel. Luther v. Ford MotorCo., Batavia Transmission Plant, 113 Ohio St.3d 144, 2007-Ohio-1250. (Attached as Appendix A.) No party has filed objections to the magistrate's findings of fact, and we adopt them as our own. Nevertheless, we reiterate briefly those facts most pertinent to our consideration of the employer's objections.
 {¶ 3} As detailed in the magistrate's decision, relator suffered a work-related injury on October 11, 2005, and the employer began paying relator TTD compensation seven days later. The employer moved to terminate TTD compensation on April 13, 2006, asserting that relator's injury had reached maximum medical improvement ("MMI").
 {¶ 4} On April 15, 2006, the employer discontinued TTD payments, citing a March 24, 2006 C-84, which had certified TTD to an estimated return-to-work date of *Page 3 
April 15, 2006. Relator did not return to work on that date. Instead, relator sought additional medical treatment and, on May 5, 2006, moved for the addition of allowances to his industrial claim.
 {¶ 5} On June 5, 2006, the employer notified relator that the employer had suspended his employment because he had three consecutive unreported absences, in violation of company policy. On June 6, 2006, the employer terminated relator's employment. Inexplicably, the June 6 termination letter instructed relator to return company equipment by June 2, 2006.
 {¶ 6} A June 7, 2006 C-84 certified TTD beginning May 2, 2006 through an estimated return-to-work date of August 3, 2006. The employer denied TTD compensation based on this C-84.
 {¶ 7} Following a hearing on June 20, 2006, a district hearing officer ("DHO") denied the employer's request to deny TTD compensation. The DHO found that the employer had failed to prove that relator's injury had reached MMI and concluded that relator "remains entitled to receive [TTD] compensation in this claim, at this time." The DHO also found that relator had not voluntarily abandoned his employment because the employer's work rules were not specific enough to support voluntary abandonment under State ex rel. Louisiana-Pacific Corp. v. Indus.Comm., 72 Ohio St.3d 401, 1995-Ohio-153. Finally, the DHO allowed relator's claim for two additional conditions.
 {¶ 8} Following a September 19, 2006 hearing, a staff hearing officer ("SHO") affirmed the additional allowances and awarded TTD compensation for the period of *Page 4 
May 2 through June 5, 2006. However, the SHO denied TTD compensation for the period after June 5, 2006, because relator had voluntarily abandoned his employment.
 {¶ 9} Relator filed this original action, and a magistrate issued a decision recommending that this court issue a writ of mandamus ordering the commission to address additional legal issues pursuant toLuther. The employer filed the following objections:
 Where material facts are undisputed and the case is subject to resolution by applying the law to the facts, it is error to remand the issue to the [commission] for re-hearing.
 Where an employee is discharged for misconduct, such as being absent from work for seven and a half weeks without explanation, does the discharge result in a loss of entitlement to further [TTD] compensation, even if the employee produces a doctor's statement created after the discharge alleging the employee's disability over a portion of the time that he was absent from work without explanation.
Neither the commission nor relator responded to the employer's objections.
 {¶ 10} It is well-established that a discharge from employment may be "voluntary" in some circumstances. State ex rel. Watts v. SchottensteinStores Corp., 68 Ohio St.3d 118, 121, 1993-Ohio-133. InLouisiana-Pacific, the Ohio Supreme Court stated that, when a worker has been discharged for violating a rule, the commission may conclude that the discharge constituted a voluntary relinquishment of employment where: (1) the employer's rule or policy defined the prohibited conduct clearly in writing; (2) the rule or policy identified the violation as a dischargeable offense; and (3) the worker knew, or should have known, both the rule and the consequences of violating the rule or policy. Id. at 403. *Page 5 
 {¶ 11} Where a claimant has voluntarily relinquished his or her job, either by resigning or by abandoning it underLouisiana-Pacific, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. See, e.g., State ex rel. Danielsv. Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626.
 {¶ 12} The Ohio Supreme Court has explained, however, that, where the conduct is causally related to the injury, the termination of employment is not voluntary. State ex rel. Pretty Products, Inc. v. Indus.Comm., 77 Ohio St.3d 5, 7, 1996-Ohio-132. Rather, "the underlying facts and circumstances of each case determine whether a departure by firing may be voluntary or involuntary." Id.
 {¶ 13} The Supreme Court has cautioned that "a postinjury firing must be carefully scrutinized." State ex rel. McKnabb v. Indus. Comm.,92 Ohio St.3d 559, 562, 2001-Ohio-1285. The court also has emphasized the "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." State ex rel. Smith v. Superior's BrandMeats, Inc., 76 Ohio St.3d 408, 411, 1996-Ohio-166.
 {¶ 14} As the magistrate detailed in his decision, in Luther, the Supreme Court granted a limited writ returning a case involving voluntary abandonment to the commission for further consideration. In particular, the court identified two questions the commission did not answer: (1) whether the claimant was already disabled when the employer fired him; and (2) whether his injury induced the absenteeism for which he *Page 6 
was fired. Recognizing our obligation to closely scrutinize post-injury firings, this court has similarly ordered the commission to give additional consideration to issues relating to the alleged voluntary abandonment. See, e.g., State ex rel. Darden v. Indus. Comm., Franklin App. No. 05AP-97, 2005-Ohio-6812 (granting limited writ ordering determination of causal connection between termination and injury), and cases cited therein. The employer argues in his first objection that no further consideration is necessary here. For the reasons outlined by the magistrate, however, we disagree.
 {¶ 15} First, as the magistrate noted, the SHO's order does not clarify the grounds for relator's termination. Instead, the SHO's order refers to relator's absences and to relator's failure to maintain contact with the employer. Each scenario presents significant, but different, legal issues.
 {¶ 16} Second, the employer's internal records indicate that relator "was scheduled to return to work 5/30/06." The record also includes the call-off logs for May 30, May 31, and June 1, presumably, the three-day period constituting relator's three consecutive unreported absences. However, Dr. Thomas' March 24, 2006 C-84 certifies April 15 as the return-to-work date, and no other C-84 certifies a May 30 return-to-work date.
 {¶ 17} In its objections, the employer asserts that the May 30 reference in its own internal documents is simply wrong. As the employer notes: "That notation [to May 30] cannot be correct because it is undisputed that there was no communication between [relator] and the employer from April 14, 2006 through June 6, 2006." (Employer's Obj. at 4.) While we agree with the employer that the May 30 reference is *Page 7 
inconsistent with the SHO's finding that relator did not contact the employer during this time period, we decline to resolve the discrepancy, particularly since our record does not contain a transcript of the DHO or SHO hearings. Rather, in order to determine when and why relator was terminated, the commission must clarify when the employer expected relator to return to work, the conduct for which relator was fired, and whether relator was disabled when the termination occurred. Therefore, we overrule the employer's first objection.
 {¶ 18} In its second objection, the employer asserts that relator's post-discharge evidence of disability is irrelevant because relator's failure to contact the employer had already intervened to cause relator's discharge. We find, however, that we cannot address this objection because the commission's decision does not adequately explain the circumstances surrounding relator's discharge, as we explained above. Therefore, we overrule the objection.
 {¶ 19} In conclusion, following our independent review of this matter, we adopt the magistrate's findings of fact and conclusions of law as our own. Accordingly, we issue a limited writ ordering the commission to vacate its order to the extent that it finds relator ineligible for TTD compensation after June 5, 2006, and to enter an amended order that determines relator's eligibility in a manner consistent with this decision.
Objections overruled, limited writ of mandamus granted.
 BRYANT and TYACK, JJ., concur. *Page 8 APPENDIX A MAGISTRATE'S DECISION Rendered August 9, 2007 {¶ 20} In this original action, relator, Ervin N. Brown, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 9 
vacate its order to the extent that it denies temporary total disability ("TTD") compensation after June 5, 2006 on grounds that relator voluntarily abandoned his employment, and to enter an order finding that relator did not abandon his employment and awarding TTD compensation after June 5, 2006.
Findings of Fact: {¶ 21} 1. On October 11, 2005, relator sustained an industrial injury while employed as a "sprayer" for respondent TS Trim Industries, Inc. ("employer"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator injured his left wrist when he pushed a punch dye in place. The next day, relator presented to a hospital emergency room for treatment. After the wrist was X-rayed, the emergency room physician noted a "left wrist strain" and restricted relator to light-duty work.
 {¶ 22} 2. Thereafter, the employer certified the industrial claim for "left wrist strain."
 {¶ 23} 3. Starting October 18, 2005, the employer began paying TTD compensation to relator based upon submission of C-84 reports from the attending physician.
 {¶ 24} 4. On November 5, 2005, relator underwent an MRI of the left wrist. The radiologist found a "tear of the triangular fibrocartilage."
 {¶ 25} 5. On December 27, 2005, relator was examined by hand surgeon Raymond J. Kobus, M.D., who wrote:
 * * * My impression is this gentleman is suffering from left wrist de Quervain's tenosynovitis, left wrist synovitis, which may be secondary to inflammation as well as triangular *Page 10 
fibrocartilage complex tear and mild left carpal tunnel syndrome.
 * * * I feel this gentleman would benefit from cortisone injection therapy in the area of the first dorsal compartment tendons as well as in the area of his carpal canal. We will also recommend a more firm fitting thumb spica splint for him, as the present splint that he has does allow too much flexibility at the area of the base of the thumb. * * *
 {¶ 26} 6. On February 9, 2006, at the employer's request, relator was examined by Richard S. Kaplan, M.D., who wrote:
 The reported mechanism of injury is not in my opinion consistent with the additional conditions requested as "left carpal tunnel syndrome" or "left deQuervain's syndrome" or "Left carpal metacarpal synovitis". In my opinion those findings or diagnoses, if present, are incidental and are not related mechanistically to the reported mechanism of injury of October 2005. Therefore in my opinion this claim should not be additionally allowed for the allowed conditions of left carpal tunnel syndrome, deQuervain's synovitis, or carpal metacarpal synovitis, but rather it is my opinion that the patient has fully recovered from the condition of a left wrist sprain and has no limitations in that regard and any ongoing symptoms or limitations he has are due to a left ulnar neuropathy and/or other conditions which are not related to the underlying industrial injury in this claim.
 {¶ 27} 7. On March 27, 2006, Dr. Kaplan issued an addendum to his earlier report. The addendum states:
 As I stated in my report of 2/09/06, it was my opinion at that time that this patient had fully recovered from the allowed condition of a left wrist strain of 10/11/05 and had no limitations in that regard nor any ongoing symptoms in that regard. Since the patient had reached a full recovery (maximum medical improvement), it is my opinion that therefore there was no evidence to support any additional temporary total disability benefits for this injury, nor was there any evidence to support the need for any additional treatment for the allowed condition. *Page 11 
 {¶ 28} 8. By letter dated April 3, 2006, the employer informed relator that it would no longer pay for medical treatment.
 {¶ 29} 9. On April 11, 2006, treating physician Leigh Thomas, M.D., wrote to the employer's third-party administrator ("TPA"):
 In my medical opinion, the work related injury was the direct and proximate cause of Mr. Brown's symptoms. The additional allowances of 842.09 left triangular fibro-cartilage complex tear, 354.0 left carpal tunnel syndrome, and 727.04 left de Quarvain's tenosynovitis should be part of Mr. Brown's claim and the cortisone injections and follow up treatment by Dr. Kobus should be approved to get this patient the appropriate treatment and get him back to work.
(Emphasis sic.)
 {¶ 30} 10. On April 13, 2006, citing Dr. Kaplan's reports, the employer moved for termination of TTD compensation.
 {¶ 31} 11. Earlier, on a C-84 dated March 24, 2006, Dr. Thomas certified TTD to an estimated return-to-work date of April 15, 2006. Dr. Thomas' certification was based upon the left wrist strain.
 {¶ 32} 12. Because no other C-84 was timely submitted to the employer by the April 15, 2006 estimated return-to-work date, the employer discontinued TTD payments as of April 15, 2006.
 {¶ 33} 13. On May 2, 2006, at his own request, relator was initially examined by Charles B. May, D.O., for the treatment of his industrial injury. In a report dated May 3, 2006, Dr. May wrote:
 * * * [I]t is my medical opinion that Mr. Brown does suffer from left DeQuervain tendonitis and left triangular *Page 12 
fibrocartilage complex tear as a direct and proximate result of his work accident occurring on 10/02/2005.
 {¶ 34} 14. On May 5, 2006, citing the April 11, 2006 report of Dr. Thomas and "other medical evidence," relator moved that his industrial claim be additionally allowed.
 {¶ 35} 15. By letter dated June 5, 2006, the employer's Human Resources Senior Manager, Ms. Frances West, informed relator:
 This letter is to inform you of the suspension of your employment with TS Trim Industries, Inc. for 3 consecutive, unreported absences as outlined in section 6.2 of the TTI Handbook.
 A recommendation will be made to the Board of Directors for the termination of your employment.
 HR will contact you regarding the final decision made by the Board of Directors concerning your employment status.
 {¶ 36} 16. The record contains an employer document captioned "Termination of Employment Request." The document states relator's violation as "3 consecutive, unreported absences." The document further declares:
 * * * Ervin has been on Worker's Comp leave since 10/14/2005. Ervin was scheduled to return to work 5/30/06. Ervin has neglected to show for work, call the call off, notify HR or Frank Gates of his return to work status.
 {¶ 37} The document shows the approval of the employer's plant manager and the employer's board of directors.
 {¶ 38} 17. By letter dated June 6, 2006, Ms. West informed relator:
 This letter is to inform you of the termination of your employment with TS Trim Industries, Inc. for violation of policy as outlined in section 6.2 (work guidelines) of the TTI Handbook. *Page 13 
 {¶ 39} 18. The record contains a copy of the employer's associate handbook, the receipt of which relator acknowledged on June 14, 2003. Under "6.2 Work Guidelines," the handbook provides:
 Behavior which could result in disciplinary action includes, but is not limited to:
 * * *
 * * * Three (3) consecutive unreported absences[.]
 {¶ 40} 19. On June 7, 2006, Dr. May prepared a C-84 on which he certified TTD beginning May 2, 2006 through an estimated return-to-work date of August 3, 2006. The C-84 form poses the following query to the physician of record: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."
 {¶ 41} In response to the above query, Dr. May wrote: "TFCC tear [left] wrist[,] tenosynovitis [left] wrist."
 {¶ 42} 20. By letter dated June 15, 2006, the employer's TPA informed relator that the employer is in receipt of Dr. May's C-84 dated June 7, 2006, and that the employer is denying the request for TTD compensation on grounds that Dr. May is not the physician of record and "it appears you are treating for non-allowed conditions."
 {¶ 43} 21. The employer's motion for termination of TTD compensation and relator's motion for the allowance of additional conditions were heard by a district hearing officer ("DHO") on June 20, 2006. Following the hearing, the DHO issued an order additionally allowing the claim for "left wrist DeQuervain's tenosynovitis and left triangular fibrocartilage complex tear." *Page 14 
The DHO's order further states:
 It is the order of the District Hearing Officer that the employer's request to terminate temporary total disability compensation in this claim is denied.
 The employer asserted at hearing that the injured worker's temporary total disability compensation should be terminated based on two alternative theories. The first theory is that the injured worker's allowed conditions have attained maximum medical improvement and that the injured worker is fully capable of returning to his former position of employment. The employer's second argument is that the injured worker voluntarily abandoned his former position of employment and that, therefore, he is not entitled to temporary total disability compensation in this claim. For the reasons that follow, the District Hearing Officer rejects both of the employer's assertions.
 Initially, it is the finding of the District Hearing Officer that the employer has failed to prove that the injured worker's allowed conditions have attained maximum medical improvement. The District Hearing Officer finds, per the injured worker's testimony at hearing, that he has continued to suffer from left wrist discomfort since the date of this injury but did not pre-exist this injury. The District Hearing Officer additionally notes that Dr. Thomas and Dr. May both have certified the injured worker as temporarily and totally disabled due to the allowed condition in this claim. For this reason, the District Hearing Officer concludes that the injured worker's allowed conditions remain temporary in nature and that, therefore, the injured worker remains entitled to receive temporary total disability compensation in this claim, at this time.
 The District Hearing Officer additionally finds that the employer has failed to sustain its burden of proving that the injured worker voluntarily abandoned his former position of employment on 06/06/2006. On that date, the employer of record sent a letter to injured worker, informing him that he had been terminated for violation of Section 6.2 (Work Guidelines) of the T.S. Trim Industries. At hearing, the employer's attorney clarified that the injured worker had been terminated due to violation of three consecutive unreported absences rule. The employer's representative *Page 15 
further indicated that, as of 06/06/2006, there was no medical evidence on file certifying the injured worker's continued disability due to the allowance in this claim and that the injured worker himself had not contacted the employer of record since 04/15/2006 when his last certification of disability expired.
 The District Hearing Officer finds that the employer's work guidelines fail to satisfy the pre-requisites as set out in State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401. Specifically, the District Hearing Officer finds that the written work rule/policy does not specifically indicate that the violation of the three consecutive unreported absences rule is a dischargeable offense. In the employer's work guidelines, it indicates that "serious infractions may warrant immediate termination." The District Hearing Officer finds that this language does not provide a clear indication to the reader that the violation of any of the rules enumerated in that section are dischargeable offenses. As such, the District Hearing Officer concludes that the injured worker did not voluntarily abandoned his former position of employment by violating a written work rule/policy that clearly defined the prohibited conduct and had been previously identified by the employer as a dischargeable offense.
 {¶ 44} 22. The employer administratively appealed the DHO's order of June 20, 2006.
 {¶ 45} 23. Following a September 19, 2006 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 06/20/2006, is modified to the following extent.
 * * * The claim remains additionally allowed for "LEFT WRIST TFCC TEAR, LEFT WRIST DEQUERVAIN'S TENOSYNOVITIS," based on the reports of Drs. Thomas (04/11/2006), May (05/03/2006), Kobus (12/27/2005), and the MRI of 11/04/2005.
 Temporary total compensation is awarded for the closed period of 05/02/2006 through 06/05/2006, based on the C-84 report of Dr. May. Temporary total compensation is not *Page 16 
payable at this time after 06/05/2006 as the Staff Hearing Officer finds that the injured worker was terminated for a violation of a written work rule, Policy no. 6.2, three days of no call/no show, as of 06/06/2006, pursuant to the case of Louisiana-Pacific. There was no argument at hearing that the written work rule was too vague to permit the termination of an employee. The injured worker, however, argued based on several factors, that the employer was fully aware of the injured worker's inability to work due to the industrial injury, that they were on notice of such, and therefore, the Louisiana-Pacific case should not apply. Temporary total compensation had last been paid in the claim as of 04/14/2006 based on a C-84 report from the injured worker's former attending physician, Dr. Thomas (03/24/2006). There was no evidence of any contact of the employer by the injured worker between 04/14/2006 and 06/06/2006 to advise them of his status regarding the allowed left wrist condition. The Staff Hearing Officer simply does not find the injured worker's position in this regard to be persuasive.
 Any temporary total compensation paid after 06/05/2006 to the present is declared an overpayment, to be recouped pursuant to O.R.C. 4123.511(J).
(Emphasis sic.)
 {¶ 46} 24. On October 12, 2006, another SHO mailed an order refusing the administrative appeals filed by relator and the employer.
 {¶ 47} 25. On February 23, 2007, relator, Ervin N. Brown, filed this mandamus action.
Conclusions of Law: {¶ 48} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 49} The disposition of this case is controlled by the recent case of State ex rel. Luther v. Ford Motor Co., Batavia TransmissionPlant, 113 Ohio St.3d 144, 2007-Ohio-1250. *Page 17 
 {¶ 50} As the Luther court itself acknowledged, the facts in that TTD case are complex. Accordingly, the magistrate will not attempt to detail all the facts listed in the Luther court decision. Suffice it to say, while working as an electrician, Jeffrey Luther injured his back at Ford Motor Company's Batavia, Ohio plant on January 25, 1991, and his industrial claim was allowed. His condition worsened and, after a second surgery in late 1998, he was restricted to light-duty work by attending physician Stephen D. Heis. Dr. Heis never lifted those restrictions and never released Luther to return to work.
 {¶ 51} Luther returned to light-duty work at Ford following his second surgery, but sometime in 2000 or 2001, Ford sold its Batavia plant. Although Luther was transferred to Ford's Sharonville facility, no light-duty work ever became available there. Dr. Heis continued to certify Luther as medically unable to return as an electrician and the commission awarded TTD compensation through December 9, 2001 and to continue upon submission of medical proof.
 {¶ 52} For the next nine months, Ford received no further medical information. The court states that the reason for this is not apparent from the record since Luther continued to see Dr. Heis every month. Dr. Heis prepared a March 14, 2002 C-84 that certified TTD compensation through June 10, 2002, but Ford did not immediately receive that report.
 {¶ 53} On August 22, 2002, Ford received a C-84 of the same date that certified TTD through October 15, 2002. After Ford's counsel informed Luther's union representative that Ford would request a hearing on the matter, Luther filed a complaint against Ford for failure to pay compensation. The Ohio Bureau of Workers' *Page 18 
Compensation found the complaint invalid and that Ford was entitled to a hearing on further TTD compensation.
 {¶ 54} On November 2, 2002, Luther formally moved for TTD compensation and therewith submitted a new C-84 extending TTD through December 15, 2002. Later, Dr. Heis' office notes were submitted to a union representative.
 {¶ 55} Luther continued to see Dr. Heis on a monthly basis with no improvement documented. Again, no contemporaneous C-84 was prepared or submitted. Luther also skipped medical examinations scheduled by Ford. As a result, the commission suspended all activity in the claim.
 {¶ 56} On May 9, 2003, pursuant to the collective bargaining agreement between Ford and the union, Ford mailed a certified letter to Luther informing him that he had five working days to either return to work or submit medical information to Ford regarding his medical condition. The letter clearly warned that failure to do so would result in termination. For reasons unknown, Luther never responded despite his acknowledged receipt of the letter. On May 19, 2003, Ford terminated Luther's employment.
 {¶ 57} On September 5, 2003, Luther moved for TTD compensation from December 9, 2001 forward. Additional C-84s were submitted.
 {¶ 58} Following a February 18, 2004 hearing, a DHO ordered TTD compensation from December 9, 2001 through December 15, 2003 and to continue. Ford did not mention Luther's discharge at this hearing.
 {¶ 59} An SHO vacated that order on April 20, 2004. The SHO awarded TTD compensation from December 9, 2001 through May 19, 2003, but denied further compensation based upon a finding that Luther voluntarily abandoned his employment *Page 19 
at Ford. The SHO relied upon State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401.
 {¶ 60} Luther filed a mandamus action in this court. He argued here that the commission abused its discretion because (1) he was already disabled when fired, and (2) his absenteeism was due to his industrial injury.
 {¶ 61} The Luther court states:
 The commission's analysis was based solely on Louisiana-Pacific, which characterized as voluntary a termination "generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." 72 Ohio St.3d at 403[.] * * * The parties agree that the Louisiana-Pacific test was met in this case. The debate is whether that alone can sustain the commission's denial of compensation. The court of appeals held that it could not, relying on [Coolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141, 2003-Ohio-5357] 144[.] * * * We agree with that ruling, but clarify that it is State ex rel. Pretty Prods., Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5 * * * that is controlling, not Coolidge.
 Pretty Prods. incorporates two important principles. First, it reaffirmed that if a claimant was already disabled when employment separation occurred, temporary total disability compensation was not foreclosed. 77 Ohio St.3d at 7[.] * * * See, also, State ex rel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45[.] * * * Second, it observed that not all cases falling within the parameters of Louisiana-Pacific are the same. Where the infraction that precipitated discharge is potentially due to industrial injury, further inquiry is necessary. 77 Ohio St.3d at 7-8[.] * * *
 Luther raises both of these issues in his cross-appeal. He asserts that he was already disabled when fired. He also contends that, as alleged in Pretty Prods., he was fired for absenteeism that was induced by his industrial injury. The commission did not address either of these matters in its *Page 20 
orders, and in returning the cause to the commission, we give it the opportunity to do so.
Id. at ¶ 16-18.
 {¶ 62} Here, as above noted, the commission, through its SHO, determined that relator had violated the employer's written work rule setting forth disciplinary consequences for "3 consecutive, unreported absences." As the commission did in Luther, Louisiana-Pacific was the sole relied-upon authority. The SHO briefly explained his decision here as follows:
 * * * Temporary total compensation had last been paid in the claim as of 04/14/2006 based on a C-84 report from the injured worker's former attending physician, Dr. Thomas (03/24/2006). There was no evidence of any contact of the employer by the injured worker between 04/14/2006 and 06/06/2006 to advise them of his status regarding the allowed left wrist condition. * * *
 {¶ 63} There is no dispute between the parties here as to the factual accuracy of the SHO's brief explanation. The parties agree that TTD compensation had last been paid in the claim through April 14, 2006, and that the employer received no further medical evidence of disability until after termination of employment on June 6, 2006. The parties also agree that there is no record of relator having contacted his employer regarding his medical status between April 14 and June 6, 2006.
 {¶ 64} As was the case in Luther, confining the analysis to the three-part test of Louisiana-Pacific is inadequate when the circumstances indicate that the industrial injury may have played a role in the violation that resulted in the termination.
 {¶ 65} Some observations are in order here. To begin, the commission made no finding that relator "was scheduled to return to work 5/30/06" as stated in the employer's *Page 21 
document of record. While the employer apparently fired relator for failing to either show for work or call off work for three consecutive days beginning May 30, 2006, the commission's order never actually determines the days that relator violated the employer's policy. In fact, the order seems to say that the violation was based upon the failure to contact the employer between April 14 and June 6, 2006, rather than any particular three-day period.
 {¶ 66} Moreover, if relator was scheduled to return to work on May 30, 2006 as the employer's document states, there is no corroborative evidence of this in the record. For example, there is no correspondence from the employer to relator announcing that he is expected to return to work on May 30, 2006. There is no internal memorandum from the employer explaining why the employer expected relator to return to work on May 30, 2006. It seems odd that the employer produced no evidence of any attempted communication with relator that he was scheduled to return to work specifically on May 30, 2006.
 {¶ 67} The employer was well aware, or should have been aware, that additional claim allowances were an issue in the claim. Relator's then attending physician had certified TTD to an estimated return-to-work date of April 15, 2006 based solely upon the "left wrist sprain" which was the only claim allowance at that time. On April 13, 2006, two days before the estimated return-to-work date, the employer moved to terminate TTD compensation on maximum medical improvement grounds.
 {¶ 68} The commission's allowance of the additional conditions occurred after relator was fired. Had Dr. May certified TTD based upon those conditions prior to *Page 22 
relator's firing, the employer most certainly would have rejected the C-84 certification on grounds that it was premised on nonallowed conditions.
 {¶ 69} The SHO's order of September 19, 2006 is internally inconsistent under Luther, as relator points out, because the SHO found that relator was TTD from May 2 through June 5, 2006, which covers the three consecutive days during which he is said to have violated the written work rule. As the Luther court states, State ex rel. PrettyProducts, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5, incorporates two important principles, the first of which is "that if a claimant was already disabled when employment separation occurred, temporary total disability compensation was not foreclosed." Luther, at ¶ 17. Thus, under Luther, the SHO's order of September 19, 2006 is, on its face, internally inconsistent in finding a voluntary abandonment during a period of disability.
 {¶ 70} Here, the employer rhetorically asks whether a "backdated certification of disability" created after the employment termination, "can negate the termination." Relator is, of course, referring to Dr. May's C-84 dated June 7, 2006. In that C-84, Dr. May certified a period of TTD beginning May 2, 2006, the date that Dr. May first saw relator for treatment of his industrial injury. Apparently, relator's conclusion that it is "backdated" is based upon the fact that Dr. May prepared the C-84 over a month after the certified start date for TTD. There is clearly nothing improper about Dr. May's certification of disability for a period that is retrospective of the preparation date of the C-84. That Dr. May's C-84 certifies TTD for a period that is retrospective of the preparation date (but prospective of the examination date) does not render the C-84 invalid. *Page 23 
 {¶ 71} Clearly, neither the commission nor this court has the authority in this case to negate the employment termination. However, the commission does have the authority and the duty to determine the effect of the employment termination on relator's TTD eligibility.
 {¶ 72} In short, the commission failed to address the critical issues before it — i.e., those issues set forth in Luther. Thus, the commission abused its discretion.
 {¶ 73} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order to the extent that it finds relator ineligible for TTD compensation after June 5, 2006, and to enter an amended order that determines relator's eligibility after addressing the critical issues under Luther. *Page 1