[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 5.]

THE STATE EX REL. PRETTY PRODUCTS, INC., APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Pretty Products, Inc. v. Indus. Comm.*, 1996-Ohio-132.]

*Workers' compensation—Application for temporary total disability
compensation—Finding by Industrial Commission that claimant did not
voluntarily abandon position of employment—Order remanded to
commission by Supreme Court for further explanation and clarification
when order is vague.*

(No. 94-1845—Submitted July 24, 1996—Decided October 23, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD05-682.

───────────────

{¶ 1} On two different occasions, appellee-claimant, Maxine Dansby, injured her low back in the course of and arising from her employment for appellant-relator, Pretty Products, Inc., a self-insured employer. The first incident occurred in February 1990. Relator states that it certified the claim, which was allowed for "sprain/strain lumbosacral." After a period of absence from work, claimant returned to her job at Pretty Products, Inc.

{¶ 2} On November 8, 1990, claimant again left work and went to the hospital because of low back pain. Claimant saw her attending physician, Dr. Alfred H. Magness, for treatment. In a series of medical excuse slips, Dr. Magness certified that claimant was unable to return to her former job. The last of these medical slips certified that claimant could return to work on March 1, 1991.

{¶ 3} Claimant did not return to work on Friday, March 1, 1991, nor did she then produce an excuse slip that extended her disability. Claimant did not report to work on the following Monday or Tuesday, and, consequently, she was terminated pursuant to a provision in the union/management agreement. Relator states that

although claimant eventually contacted her union representative about filing a grievance to challenge her discharge, claimant did not file a grievance because it would have been considered untimely.

{¶ 4} In June 1991, claimant moved appellee Industrial Commission for temporary total disability ("TTD") compensation beginning November 8, 1990, based on the first claim. In support of the motion, she submitted a June 8, 1991 C-84 "Physician's Report Supplemental" that was based on an April 26, 1991 exam and that certified claimant as temporarily totally disabled beginning November 8, 1990, to an estimated return-to-work date of August 1, 1991.

{¶ 5} In August 1991, claimant filed a second workers' compensation claim alleging that she had injured her low back, neck and shoulders on November 8, 1990. Relator refused to certify this claim, however, contending that it was a "reoccurrence" of the first claim. In October, claimant filed a motion in the second claim requesting TTD compensation from November 8, 1990. Claimant alternatively requested wage loss compensation in the event that TTD compensation was denied. On November 25, 1991, a district hearing officer heard the allowance and wage compensation issues of the second claim, and issued an order allowing claimant's back injury as an "aggravation [of] pre-existing lumbosacral sprain/strain." Finding that claimant's discharge constituted a voluntary abandonment of her former position of employment, the district hearing officer denied both TTD and wage loss compensation beyond March 4, 1991. The regional board of review affirmed the district hearing officer's order in the second claim. On further appeal by claimant, staff hearing officers modified the district hearing officer's order "to the extent that Temporary Total Disability compensation is payable from 3/5/91 to [*sic*] and to continue based on submission of medical proof. It is found that the claimant did not voluntarily abandon her former position of employment on 3/4/91 for the reason that she did not timely submit an excuse slip from her doctor." Relator's motion for reconsideration was denied.

**{¶ 6}** Relator filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in awarding TTD compensation beyond March 5, 1991. The court of appeals upheld the staff hearing officers' findings and denied the writ.

**{¶ 7}** This cause is now before this court upon an appeal as of right.

—————————————

*Emens, Kegler, Brown, Hill & Ritter* and *Ronald L. Mason*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellee Industrial Commission.

*Larrimer & Larrimer, Terrence W. Larrimer* and *David H. Swanson*, for appellee Maxine Dansby.

—————————————

**MOYER, C.J.**

**{¶ 8}** This case presents the question of whether the Industrial Commission abused its discretion by finding that the claimant did not voluntarily abandon her position of employment, and that further temporary total disability compensation should be awarded. Because of the vagueness of the commission's order, we must remand for further explanation and clarification of the reasoning supporting that order.

**{¶ 9}** The receipt of temporary total disability ("TTD") compensation rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury. *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus. However, eligibility may be compromised when the claimant is no longer employed at that job. Once a claimant is separated from the former position of employment, future TTD compensation eligibility hinges on the timing and character of the claimant's departure.

**{¶ 10}** The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur,

it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55, 58.

{¶ 11} However, such situations are not common, and inquiry into the character of departure is the norm. While voluntary departure generally bars TTD compensation, an involuntary departure does not. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. In the instant case, the commission found that claimant's departure was involuntary. Review of the commission's order, however, is hindered because it is susceptible of several different interpretations.

{¶ 12} For example, one possible interpretation of the commission's statement that "claimant did not voluntarily abandon her former position of employment on 3/4/91 for the reason that she did not timely submit an excuse slip from her doctor" could be that the separation was not voluntary because firings are *per se* involuntary. If this is indeed the commission's reasoning, it is wrong. As this court has recently held, the underlying facts and circumstances of each case determine whether a departure by firing may be voluntary or involuntary. *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 411, 677 N.E.2d 1217, 1219.

{¶ 13} Another possible reading of the commission's order is that the commission modified the district hearing officer's order based on the belief that termination for unexcused absence could not support a finding of voluntary abandonment. This, too, is incorrect. In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, the claimant, as in the present case, was fired for violating a policy prohibiting three consecutive unexcused absences. We held that the claimant's discharge was voluntary, stating,

"we find it difficult to characterize as 'involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." *Id.* at 403, 650 N.E.2d at 471. However, there is an important distinction between *Louisiana-Pacific* and this case. In the former, there was no evidence that the claimant's absences were due to industrial injury, while in this case there is. Whether this distinction is ultimately outcome-determinative, however, cannot be decided absent clarification of the commission's reasoning.

{¶ 14} A third possible interpretation of the commission's order is that the commission found that claimant had been fired because of her industrial injury. If that indeed was the case, a finding of involuntary departure could be sustained. *Rockwell, supra.* Again, however, without clarification, judicial review can proceed no further.

{¶ 15} Given the possibility that any of these interpretations could reflect the commission's reasoning, the judgment of the court of appeals is reversed and the cause is remanded to the commission for clarification.

*Judgment reversed*

*and cause remanded.*

RESNICK, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.

_____