IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} In this original action, relator Powertrain Division, General Motors Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which granted temporary total disability ("TTD") compensation to respondent Martha A. Hudson ("claimant"), and ordering the *Page 2 
commission to find that claimant is not entitled to TTD compensation on the basis that claimant accepted a voluntary retirement.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R.53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion by relying on the testimony of claimant to find that she had not voluntarily abandoned her employment with relator when she signed the "Special Attrition Plan" and release. Consequently, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision arguing the magistrate's finding that respondent involuntarily retired from her employment at Powertrain and that the commission's award of TTD is supported by "some evidence" is erroneous.
 {¶ 4} No objections have been made to the magistrate's findings of fact. Upon an independent review of said findings of fact, we adopt them as our own. For ease of discussion, however, a brief recitation of the facts is appropriate at this juncture.
 {¶ 5} Claimant sustained a work-related injury in February 2003, and her claim was allowed for various conditions. Claimant sought TTD compensation for multiple periods. At some point, claimant returned to light-duty employment with relator, but was laid off when the light-duty position was no longer available.
 {¶ 6} In early 2006, relator offered a retirement package to certain employees. Claimant agreed to retire and signed the "Special Attrition Plan" and release, which was effective June 1, 2006. Thereafter, relator filed a motion to terminate the TTD effective June 1, 2006. The matter was heard before a district hearing officer ("DHO") who denied *Page 3 
relator's motion. On appeal, a staff hearing officer ("SHO") agreed that TTD compensation was payable despite claimant's retirement, but modified the DHO's order upon finding that based on the report of Dr. Besaw, claimant had reached maximum medical improvement ("MMI"), as of August 9, 2006. This mandamus action followed.
 {¶ 7} Relator argued before the magistrate that the commission abused its discretion by relying on claimant's testimony to find that she had not voluntarily abandoned her employment with relator. According to relator, by accepting retirement and signing the release, claimant voluntarily retired and gave up her claim to workers' compensation benefits.
 {¶ 8} We recognize that relator essentially re-argues to this court that which was presented to and addressed by the magistrate, particularly with respect to its arguments relating to State ex rel Fumev. Indus. Comm., Franklin App. No. 03AP-370, 2004-Ohio-1977. After reviewing the magistrate's decision, we find that the magistrate applied the appropriate law, and adopt the magistrate's conclusions of law as our own.
 {¶ 9} However, after the magistrate rendered her decision recommending that this court deny the requested writ of mandamus, this court rendered a decision in State ex rel. Pierron v. Indus. Comm., Franklin App. No. 06AP-391, 2007-Ohio-3292, which relator contends is dispositive, and requires this court to grant its requested writ of mandamus. Therefore, we will address Pierron and its applicability to the matter at hand.
 {¶ 10} In Pierron, the employee sustained a work-related injury, and returned to a light-duty position where he remained for approximately 20 years until the position was phased out and he took regular retirement. Six years later, the employee sought the allowance of additional claims and TTD compensation. The commission determined the employee's retirement was voluntary, and therefore, denied TTD compensation. On *Page 4 
appeal, the magistrate recommended that this court grant a writ of mandamus upon finding that the employee did not voluntarily retire. This court declined to adopt the magistrate's decision, and instead found no abuse of discretion in the commission's finding that the employee's departure from the work force was wholly unrelated to the industrial injury at issue. This court stated in Pierron, that while a "complete abandonment of the entire work force will preclude TTD compensation altogether," we "must consider not only whether a claimant's retirement from a specific job was voluntary, but also whether, by retiring the claimant intended to abandon the entire work force." Id. at ¶ 12. As noted by Pierron, "the voluntary nature of the [employee's] retirement remains a factual question that `revolves around relator's intent at the time he retired.'" Id. at ¶ 15, quoting State ex rel. Williams v.Coca-Cola Ent, Inc., Franklin App. No. 04AP-1270, 2005-Ohio-5085, affirmed by 111 Ohio St.3d 491, 2006-Ohio-6112. Because the commission made a factual determination that the employee's retirement was voluntary, and there was "some evidence" to support such determination, this court did not find that the commission abused its discretion, and therefore, found no basis upon which to disturb the commission's order. Further, this court found that the employee was not able to establish a causal connection between his injuries and his decision to retire where there was no evidence that he was temporarily disabled at the time he elected to retire.
 {¶ 11} Contrary to relator's suggestion, Pierron does not stand for the proposition advanced by relator, but rather reiterates that the voluntary nature of retirement is a factual question that revolves around the employee's intent at the time of retirement. Pierron also reiterates that questions of credibility and weight to be given evidence are within the commission's discretion as fact finder. Id. at ¶ 21, citing State ex rel Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165. *Page 5 
 {¶ 12} Unlike the employee in Pierron, here, claimant was already receiving TTD at the time of her retirement. The commission reviewed the evidence and made the factual determination that claimant's retirement was not voluntary as there was evidence that her retirement was causally related to her industrial injury. The SHO further found no evidence of any intent to leave the work force. As explained by the magistrate, there is "some evidence" to support the commission's determination. Thus, we find that Pierron actually renders support to claimant because there is some evidence to support the commission's factual determination that claimant's retirement was not voluntary. As such, there is no basis for us to find an abuse of discretion in the commission's determination.
 {¶ 13} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Writ denied.
FRENCH and WHITESIDE, JJ., concur.
 WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A IN MANDAMUS {¶ 14} Relator, Powertrain Division, General Motors Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted *Page 7 
temporary total disability ("TTD") compensation to respondent Martha A. Hudson ("claimant"), and ordering the commission to find that claimant is not entitled to TTD compensation on the basis that claimant accepted a voluntary retirement. Findings of Fact:
 {¶ 15} 1. Claimant sustained a work-related injury on February 5, 2003, and her claim has been allowed for the following conditions: "muscle spasm, left; sprain shoulder/arm, not otherwise specified, left shoulder; tendonitis, left shoulder; impingement syndrome, left; degenerative joint disease, left shoulder."
 {¶ 16} 2. In a motion dated June 29, 2005, claimant sought the payment of TTD compensation for various periods of time.
 {¶ 17} 3. In a letter dated July 18, 2005, relator accepted that motion as follows:
 Be advised that General Motors is in receipt of a C-86 Motion granting payment of temporary total disability benefits from 2-9-05, minus sickness and accident which began 2-17-05, through the present and continuing; grant payment of tt benefits, pursuant to 8-5-03 DHO from 4-7-03 to 4-10-03; 5-8-03 to 5-10-03; 3-07-03 to 3-31-03; 2-28-03 to 3-1-03; grant authorization/payment for orthopedic evaluation and surgical treatment as requested by Beth A. Besaw, M.D.
 {¶ 18} 4. The record indicates that, at some point in time, claimant returned to light-duty employment with relator but was laid off when the light-duty position was no longer available.
 {¶ 19} 5. In early 2006, relator put together a retirement package to be offered to certain employees. The plan was designed to reduce the workforce and was known as the "Special Attrition Plan."
 {¶ 20} 6. On May 3, 2006, claimant agreed to retire and signed the "Special Attrition Plan." Claimant elected the following option, which was effective June 1, 2006: *Page 8 
 Retire effective first of the month following the month my services are no longer required but no later than January 1, 2007 under the Normal or Voluntary provisions of the 2003 GM-UAW Pension Plan. I understand that under this option I will also receive a Thirty-Five Thousand Dollar ($35,000) cash payment, less applicable taxes.
 {¶ 21} 7. Pursuant to the "Special Attrition Plan," claimant also signed a release form which provided, in relevant part:
 I acknowledge that the benefits provided to me under the option of the Special Attrition Plan for my facility which I have selected are greater than the benefits to which I would otherwise be entitled and that such benefit package is available only under the terms of the Special Attrition Plan for my facility to those employees who meet all eligibility criteria for the option I have selected and who agree to separate on the applicable date.
 I am satisfied with the terms of this separation and acknowledge I am voluntarily accepting it. This acceptance is not under duress and I am able to work and suffer from no disability that would preclude me from doing my regularly assigned job. As such, I acknowledge that I am not entitled to disability pay or benefits. I acknowledge no prior representations, promises or agreements relating to my employment and separation have been made by GM or the UAW which are contrary to this agreement and the provisions of the Special Attrition Plan, and my acceptance constitutes the entire and only agreement between me and GM. I understand that I shall not be eligible for recal to work or re-employment by GM, Delphi, or any of their subsidiaries or any other entity in which the GM has an ownership interest.
 In consideration for participation in the Special Attrition Plan, I hereby release and forever discharge GM, Delphi the UAW and their officers, directors, agents, employees, stockholders and employee benefit plans from all claims, demands and causes of action, (claims) known or unknown which I may have related to my employment or the cessation of my employment or denial of any employee benefit. This release *Page 9 
specifically includes, without limitation, a release of any claims I may now have under The Employee Retirement Income Security Act of 1974 (ERISA); the Age Discrimination in Employment Act (ADEA), which prohibits discrimination based on age; Title VII of the Civil Rights Act of 1964 which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act; state fair employment practices or civil rights laws; and any other federal state or local laws or regulations, or any common law actions relating to employment discrimination. This includes without limitation any claims for breach of employment contract, either express or implied, and wrongful discharge. This release does not waive claims that arise only after the execution of this release.
 {¶ 22} 8. Thereafter, in June 2006, relator filed a motion seeking to terminate TTD compensation effective June 1, 2006, the date claimant's retirement became effective.
 {¶ 23} 9. The matter was heard before a district hearing officer ("DHO") on July 5, 2006, and resulted in an order denying relator's motion as follows:
 The Injured Worker accepted a Special Attrition Plan and terminated her employment with General Motors as of 6/1/2006.
 There is no indication that the Injured Worker abandoned the labor market; the Injured Worker is unable to return to her formal [sic] job. The former job was eliminated based upon the inability to accommodate restrictions. The Injured Worker testifies at hearing that the physical condition is the major reason for accepting the severance package. The language in the Special Attrition Plan cannot, as a matter of law, be used to limit or eliminate benefits under the Workers' Compensation statute. In addition, there is not language specific in the contract to settle or conclude any pending industrial claims.
 Temporary Total Disability Compensation remains payable upon submission of medical evidence.
 {¶ 24} 10. Relator appealed the DHO's order. Thereafter, claimant's treating physician, Beth A. Besaw, M.D., opined that claimant had reached maximum medical improvement ("MMI"). *Page 10 
 {¶ 25} 11. Relator's appeal from the DHO's order denying its motion to terminate claimant's TTD compensation as of June 1, 2006, was heard before a staff hearing officer ("SHO") on August 25, 2006. The SHO modified the prior DHO's order and found that, pursuant to the report of Dr. Besaw, claimant had reached MM I as of August 9, 2006. However, the SHO agreed that TTD compensation was payable to claimant in spite of relator's argument that her retirement and the release precluded the payment of compensation. The SHO disagreed with relator's position that the fact that claimant took the retirement and signed the release was conclusive evidence that she had voluntarily abandoned her employment as follows:
 The employer argues that injured worker should have temporary total disability terminated as of the date she signed a special attrition plan and terminated her employment with General Motors. The employer argues that on 6/1/06, injured worker voluntarily abandoned the work place. This Staff Hearing Officer finds that the totality of the evidence within this claim does not show that injured worker voluntarily abandoned the work place.
 Injured worker suffered the injury with the allowed conditions within this claim on 5/2/03. She received a period of temporary total disability and returned to work at light duty with this employer. At no time did the physician offer an opinion that injured worker was at maximum medical improvement, before 8/9/06. After working light duty with the employer of record for some time, the employer of record laid the injured worker off as the light duty position was no longer available. The employer then began paying temporary total disability again.
 The injured worker testified that she would still be working with the employer of record at her prior position of employment, if she could, or at the light duty position if it was still available. Injured worker testified that she took the special attrition plan based upon the fact that there was no job with the employer of record and she needed money to support herself beyond that being received from temporary total disability. *Page 11 
 This Staff Hearing Officer finds the facts around the current situation are close to those in State ex rel Rockwell Int. vs. Indus. Comm.
(1988) 40 Ohio St. 3d 44. Within Rockwell the Court found that the injured worker had not voluntarily left the work force when injured worker retired when the retirement was based upon an inability to return to work at light duty.
 This Staff Hearing Officer notes that the injured worker in this claim testified quite vehemently, and credibly, that she would be working at either her light duty job with the employer of record, or her prior position of employment with the employer of record, if she was able. This Staff Hearing Officer fails to find that injured worker's testimony shows any evidence of any intent to leave the work force.
 The Staff Hearing Officer fails to find that the "boilerplate" language of the special attrition plan is controlling in this matter. There is no language within the special attrition plan contract that settles any specific Workers' Compensation claim. Further, there is no indication within the language of the retirement plan that waives any right to specific Workers' Compensation benefits.
 Based upon the foregoing, the Staff Hearing Officer finds that temporary total disability is appropriately payable for the closed period of 6/1/06 through 8/9/06.
 {¶ 26} 12. Relator's further appeal was refused by order of the commission mailed September 14, 2006. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 27} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 28} In this mandamus action, relator raises one argument. Relator contends that the commission abused its discretion by relying on claimant's testimony to find that *Page 12 
she had not voluntarily abandoned her employment with relator. Relator contends that, by accepting retirement and signing the release, claimant clearly voluntarily retired and gave up any claim to workers' compensation benefits. As part of the record, relator included three additional DHO orders wherein the DHOs had determined that by accepting relator's "Special Attrition Plan" package, three separate claimants were no longer eligible for TTD compensation. Relator contends that it presented conclusive evidence on this issue that the commission abused its discretion by deciding otherwise.
 {¶ 29} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 30} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 31} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. Citing Ramirez and State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145. Where an employee has taken action that would preclude his return to his former position of employment, even if he were able to do so, he is not entitled to continued TTD compensation since it is his own action, rather than the industrial injury, which prevents *Page 13 
his returning to his former position of employment. When determining whether an injury qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury, whereas the latter part of the test determines if there are any factors, other than the injury, which prevent the claimant from returning to his former position of employment. Ultimately, the court held that where a claimant's retirement is causally related to his injury, the retirement is not "voluntary" and does not preclude eligibility for TTD compensation.
 {¶ 32} In the present case, the commission relied upon claimant's testimony. Claimant testified that she would still be performing light-duty work for relator if such a position was available. Claimant did admit that her current financial situation was also a factor in her decision to accept relator's "Special Attrition Plan." The commission found her testimony to be credible in spite of the fact that she had signed the documents. The commission noted further that the documents relator presented did not specifically address any workers' compensation claims. As noted in findings of fact number seven, relator specifically listed several different causes of action and rights within the body of the release form which employees were waiving by signing the release but did not include the release of workers' compensation claims.
 {¶ 33} Relator cites State ex rel. Furrie v. Indus. Comm., Franklin App. No. 03AP-370, 2004-Ohio-1977, as controlling. In Furrie, the claimant began receiving TTD compensation in January 2001. In November 2002, the claimant accepted an age-based retirement after 30 years of service. Thereafter, the employer filed a motion to terminate TTD compensation on grounds that the claimant had abandoned his former position of employment. At the hearing, the claimant testified that he retired because his retirement income would exceed the amount of compensation he had been receiving through the *Page 14 
payment of TTD compensation and the extended disability benefits from the company. Based upon the claimant's testimony, the commission denied the claimant continuing TTD compensation. The claimant sought a writ of mandamus ordering the commission to reinstate his TTD compensation. This court found that the commission did not abuse its discretion in finding that the claimant retired for financial reasons and not because of his allowed conditions. Relator contends that the present case is factually identical to Fume. This magistrate disagrees.
 {¶ 34} As noted previously, the commission relied upon claimant's testimony wherein she indicated: (1) she would still be working at her prior position of employment, if she could, or at the light-duty position if it was still available, and (2) she needed money to support herself beyond that being received from the payment of TTD compensation. Unlike the claimant in Fume, claimant in the present case specifically testified that she would still be working for relator but for the fact that relator no longer had a light-duty position available for her. The magistrate finds that it was not an abuse of discretion for the commission to rely on claimant's testimony that she would have continued to work for relator but for the fact that relator no longer had a light-duty position available for her. Based upon that testimony, the commission determined that her retirement was not voluntary and did not bar the receipt of TTD compensation. The magistrate also notes that relator initiated claimant's retirement. In Fume, the claimant initiated retirement. Furthermore, although not cited in the commission's order, the magistrate notes that claimant was only 51 years of age when she signed the "Special Attrition Plan," and the magistrate further questions the wisdom of relator having claimant sign documents indicating that she was not currently under a work-related disability when, in fact, relator knew that she was. The commission found that the boilerplate language *Page 15 
was not controlling. As such, the commission found that the retirement was not "voluntary" and did not affect her entitlement to TTD compensation. Again, the commission weighs the evidence and determines the credibility of the evidence in all matters which it considers. The fact that relator included three other DHO orders wherein the commission determined that certain other employees had voluntarily abandoned their employment when they accepted this "Special Attrition Plan" is immaterial in the present case. It is impossible to compare the facts of this case with the facts presented and the evidence relied upon by the commission in reaching those conclusions. Because the commission had some evidence upon which it relied, relator cannot show that the commission abused its discretion.
 {¶ 35} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated the commission abused its discretion by relying on the testimony of claimant to find that she had not voluntarily abandoned her employment with relator when she signed the "Special Attrition Plan" and release, and that this court should deny relator's request for a writ of mandamus. *Page 1