OPINION
{¶ 1} Relator, Charlotte A. Jorza, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that terminated temporary total disability ("TTD") *Page 2 
compensation on grounds that relator voluntarily abandoned her employment with respondent, Delphi Packard Electric ("Delphi"), and to enter an order reinstating TTD compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, which is appended to this opinion, and recommended that this court grant relator's request for a writ of mandamus. Delphi has filed objections to the magistrate's decision.
 {¶ 3} Delphi's objections raise no new arguments not already argued before the magistrate. The gist of Delphi's argument is that the magistrate erred in applying the analysis in State ex rel. Pretty Prods.v. Indus. Comm. (1996), 77 Ohio St.3d 5, 1996-Ohio-132, and State exrel. Reitter Stucco v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499, to the present circumstances. Delphi contends that the magistrate's order, in effect, concludes that a claimant can never voluntarily abandon her employment, thereby terminating her right to receive TTD benefits, as long as the claimant is receiving TTD benefits at the time she retires or otherwise abandons her employment, even if her reasons for doing so are completely unrelated to her disability. In its reply to Delphi's objections, the commission now agrees with the magistrate that it erred when it found relator had voluntarily abandoned her employment when she accepted the buy out.
 {¶ 4} After reviewing the relevant case law and the circumstances in the present case, we cannot find the magistrate erred in granting relator's writ of mandamus. Delphi contends that Reitter and PrettyProds. do not apply to the present case because they were "discharge" cases in which the employee was fired from his/her job for just cause, *Page 3 
while the present case involves an employee's voluntarily accepting a job buy out proposal in exchange for relinquishing her right to continue employment. However, in Reitter, the Supreme Court of Ohio, in discussing Pretty Prods., used the generic term "departure" instead of specifying whether the departure was due to the employee having quit, having accepted a buy out, or having been fired. In describing the import of Pretty Prods., the court in Reitter indicated:
 In Pretty Prods., we held that the character of the employee's departure-i.e., voluntary versus involuntary-is not the only relevant element and that the timing of the termination may be equally germane. In Pretty Prods., we suggested that a claimant whose departure is deemed voluntary does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled. Id., 77 Ohio St.3d at 7, 670 N.E.2d 466; State ex rel. OmniSource Corp. v. Indus. Comm., 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, ¶ 10.
Id. at ¶ 10. Thus, based upon this excerpt from Reitter, it appears as though the Supreme Court was not distinguishing among employees who quit, were fired or accepted a buy out. The court failed to emphasize that the departure must be pursuant to a discharge in order for the principle first suggested in Pretty Prods. to apply.
 {¶ 5} Delphi also contends that several cases, including State ex rel.Powertrain v. Hudson, 10th Dist. No. 06AP-1268, 2007-Ohio-6773, required the commission to conduct a "totality-of-the-circumstances" test to determine whether the claimant's abandonment was voluntary or involuntary. Delphi asserts that a totality-of-the-circumstances test includes factors such as the intent of the claimant to leave the work force entirely when he or she allegedly abandoned employment and whether the retirement was causally related to the industrial injury. However, the court in Reitter did *Page 4 
not mention such a requirement or conduct a totality-of-the-circumstances test. We also note that, in the present case, there is no evidence in the record demonstrating that claimant intended to leave the work force entirely. For these reasons, we overrule Delphi's objections.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of Delphi's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and grant relator's request for a writ of mandamus ordering the commission to vacate its order that terminated TTD compensation on grounds that relator voluntarily abandoned her employment with Delphi, and to enter an order reinstating TTD compensation.
Objections overruled; writ of mandamus granted.
BRYANT and CONNOR, JJ., concur. *Page 5 
 APPENDIX MAGISTRATE'S DECISION Rendered November 25, 2008 IN MANDAMUS {¶ 7} In this original action, relator, Charlotte A. Jorza, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation on grounds that *Page 6 
relator voluntarily abandoned her employment with respondent Delphi Packard Electric ("Delphi") and to enter an order reinstating TTD compensation.
Findings of Fact: {¶ 8} 1. On January 25, 2005, relator sustained an industrial injury while employed with Delphi, a self-insured employer under Ohio's workers' compensation laws. Delphi certified the industrial claim (No. 05-806076) for "contusion left rib cage; sprain ribs, left side."
 {¶ 9} 2. In June 2006, relator moved that her claim be additionally allowed for "impingement syndrome left shoulder." She also moved for TTD compensation.
 {¶ 10} 3. On August 1, 2006, both motions were heard by a district hearing officer ("DHO") who apparently granted the motions. (The DHO's order of August 1, 2006 is not contained in the stipulated record.)
 {¶ 11} 4. Delphi administratively appealed the DHO's order of August 1, 2006.
 {¶ 12} 5. On August 29, 2006, Delphi moved to terminate TTD compensation on grounds that relator had voluntarily abandoned her employment when she accepted a "Special Attrition Program" that paid her $140,000 for retiring from Delphi. Relator had executed the special attrition program agreement on July 3, 2006.
 {¶ 13} 6. Following a September 5, 2006 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of August 1, 2006. The SHO's order additionally allows the claim for "impingement syndrome left shoulder" and awards TTD compensation from June 8 through July 17, 2006 "and to continue upon submission of medical evidence of temporary total disability." *Page 7 
 {¶ 14} 7. Following an October 6, 2006 hearing, a DHO issued an order denying Delphi's motion to terminate TTD compensation.
 {¶ 15} 8. Delphi administratively appealed the DHO's order of October 6, 2006.
 {¶ 16} 9. Following a November 6, 2006 hearing, an SHO issued an order vacating the DHO's order and granting Delphi's motion to terminate. The SHO's order explains:
 * * * [T]he Staff Hearing Officer now concludes that the Injured Worker is no longer eligible for temporary total disability compensation as it is found that the Injured Worker voluntarily abandoned her employment with the Employer of Record, when she elected to accept a "buy-out agreement" of her job for $140,000, effective 08/14/06.
 As the Injured Worker voluntarily removed herself from the workforce, and there is no evidence that the Injured Worker has had a subsequent return to the workforce since accepting the "buy-out agreement," the Staff Hearing Officer concludes that temporary total disability compensation is not payable for the period from 09/06/06 through 11/06/06, the date of today's hearing, on the basis of the Injured Worker voluntarily abandonment.
 {¶ 17} 10. On November 24, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 6, 2006.
 {¶ 18} 11. On May 9, 2008, relator, Charlotte A. Jorza, filed this mandamus action.
Conclusions of Law: {¶ 19} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 20} This action is controlled by State ex rel. Reitter Stucco, Inc.v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499. *Page 8 
 {¶ 21} The commission adjudicated relator to be TTD from June 8 through July 17, 2006 and to continue upon submission of medical evidence of TTD. Because relator accepted Delphi's special attrition program during a period the commission has declared her to be medically unable to return to work at Delphi, relator retained her eligibility for TTD compensation notwithstanding her acceptance of the special attrition program.
 {¶ 22} In Reitter Stucco, the claimant, Tony A. Mayle, injured his back in 2003 while working for Reitter Stucco, Inc. In July 2004, Mayle underwent surgery. Afterwards, he undertook physical therapy and a work conditioning program. His vocational team was unsure whether Mayle would ever be capable of performing the heavy physical demands of his job on a sustained basis.
 {¶ 23} On April 15, 2005, Mayle was fired for comments made about the company's president. Prior to that, Reitter Stucco had been paying Mayle wages in lieu of TTD compensation. This payment stopped after the termination, prompting Mayle to file a motion for TTD compensation. A DHO denied the motion on grounds of voluntary abandonment underState ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. An SHO reversed finding that Mayle was TTD when he was fired, rendering State ex rel. Pretty Products, Inc. v. Indus. Comm. (1996),77 Ohio St.3d 5, not Louisiana-Pacific, controlling. The commission affirmed.
 {¶ 24} In the mandamus action, the Supreme Court of Ohio upheld the commission's order. The court states:
 Pretty Prods. was decided shortly after Louisiana-Pacific. In Pretty Prods., we held that the character of the employee's departure — i.e., voluntary versus involuntary — is not the only relevant element and that the timing of the termination may be equally germane. In Pretty Prods., we suggested that a *Page 9 
claimant whose departure is deemed voluntary does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled. Id., 77 Ohio St.3d at 7, 670 N.E.2d 466; State ex rel. OmniSource Corp. v. Indus. Comm., 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, ¶ 10. Thus, even if a termination satisfies all three Louisiana-Pacific criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred.
 The present litigants treat the two cases as mutually exclusive, with the company urging that Louisiana-Pacific is dispositive and Mayle and the commission citing Pretty Prods. Yet Louisiana-Pacific and Pretty Prods. may each factor into the eligibility analysis. If the three requirements of Louisiana-Pacific regarding voluntary termination are not met, the employee's termination is deemed involuntary, and compensation is allowed. If the Louisiana-Pacific three-part test is satisfied, however, suggesting that the termination is voluntary, there must be consideration of whether the employee was still disabled at the date of termination. We thus take this opportunity to reiterate that Louisiana-Pacific and Pretty Prods. are not mutually exclusive and that they may both factor into the eligibility analysis.
Id. at ¶ 10-11.
 {¶ 25} While the instant case does not involve a firing underLouisiana-Pacific, the result here is the same as that reached inReitter Stucco. That is, relator's medical inability to return to her former position of employment at the time she accepted Delphi's special attrition program renders her eligible for TTD compensation notwithstanding her acceptance of the special attrition program.
 {¶ 26} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of *Page 10 
November 6, 2006, and to enter a new order that reinstates TTD compensation and denies Delphi's August 29, 2006 motion for termination of TTD compensation. *Page 1