[Cite as *State ex rel. Hamilton v. Indus. Comm.*, 2021-Ohio-1824.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Tonia E. Hamilton, | : | |
| Relator, | : | |
| | : | No. 19AP-510 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 27, 2021

**On brief:** *Agee Clymer Mitchell & Portman*, and *Jay W. Dixon*, for relator.

**On brief:** *Dave Yost*, Attorney General, *Eric J. Tarbox*, for respondent Industrial Commission of Ohio.

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Theresa M. Dean*, for respondent Franklin County Commissioners.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Tonia E. Hamilton, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order entered August 14, 2017[1] denying her application for temporary total disability ("TTD") compensation and enter a new order granting such compensation.

---

[1] Findings mailed August 18, 2017.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court deny claimant's request for a writ of mandamus.  The magistrate determined the commission did not abuse its discretion when it denied relator's application for TTD benefits because relator voluntarily abandoned her employment by resignation effective December 14, 2016.

## II.  OBJECTION AND LEGAL ANALYSIS

{¶ 3}    In her objection, relator claims that the magistrate failed to consider her argument that the date of her resignation was March 14, 2017, the date she executed the resignation form disposing of her grievance.  We disagree.

{¶ 4}    We acknowledge the magistrate's decision does not contain a clear and definitive determination as to the date on which relator resigned.  Nevertheless, we can discern from the magistrate's discussion and application of *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, that the magistrate agreed with the finding of the staff hearing officer ("SHO") that relator resigned her employment effective December 14, 2016, even though she did not execute the resignation until March 14, 2017.  In applying *Klein* to the facts in the stipulated record, the magistrate determined that because the grievance procedure did not result in relator's reinstatement, the evidence before the commission supported the SHO's finding that relator voluntarily abandoned her employment on December 14, 2016, whether she resigned, or her employer discharged her for cause.  (Mag.'s Decision at ¶ 30-31, citing *Klein* at ¶ 19.)

{¶ 5}    There is no dispute that relator's employer terminated her employment for cause on December 14, 2016, but the termination was subsequently deemed a resignation when appellant executed the March 14, 2017 resignation form in connection with her grievance.  The magistrate determined that it was not an abuse of discretion for the commission to deny relator's TTD application because the March 14, 2017 resignation form provided some evidence to support the SHO's finding that appellant voluntarily abandoned her employment effective December 14, 2016.  We agree with the magistrate.

## III. CONCLUSION

{¶ 6}   On examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and consideration of relator's objection, we find the magistrate has properly determined the facts and the applicable law.  Accordingly, we overrule relator's objection and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law.   In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.

*Objection overruled*;
*writ of mandamus denied.*

DORRIAN, P.J., and BEATTY BLUNT, J., concur.

_____

## A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Tonia E. Hamilton,             :

        Relator,                             :

v.                                          :                     No.  19AP-510

Industrial Commission of Ohio et al.,        :                   (REGULAR CALENDAR)

        Respondents.                         :

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 23, 2020

*Agee Clymer Mitchell & Portman*, and *Jay W. Dixon*, for relator.

*Dave Yost*, Attorney General, *Eric J. Tarbox*, for respondent Industrial Commission of Ohio.

*Ron O'Brien*, Prosecuting Attorney, and *Joseph C. Mastrangelo*, for respondent Franklin County Commissioner.

IN MANDAMUS

{¶ 7}  Relator, Tonia E. Hamilton, brings this original action seeking a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate its order entered August 14, 2017 denying her application for temporary total disability ("TTD") compensation and enter a new order granting such compensation.

Findings of Fact:

{¶ 8}  1. Hamilton suffered injuries on February 16, 2012 during the course and scope of her employment as a bus assistant for the Franklin County Board of

Developmental Disabilities ("BDD"), an agency under respondent Franklin County Commissioners ("FCC").  (Stip. at 1.)

{¶ 9}  2. Hamilton's claim was initially allowed for sprain left shoulder; left shoulder supraspinatus tear; left shoulder infraspinatus tear; left shoulder supraspinatus tendinopathy; left shoulder infraspinatus tendinopathy; left shoulder glenohumeral synovitis; left subacromial subdeltoid bursitis.  (Stip. at 4.)

{¶ 10}  3.  A commission staff hearing officer ("SHO") issued an order on October 11, 2012 allowing an additional condition, substantial aggravation of pre-existing left shoulder degenerative joint disease.  (Stip. at 5.)

{¶ 11}  4. A commission district hearing officer ("DHO") issued an order on September 1, 2016 allowing an additional condition, left shoulder diceps tendinopathy. (Stip. at 6-7.)

{¶ 12}  5. Hamilton filed her application on April 3, 2017 requesting TTD) from January 12, 2017 forward to continue with supporting medical documentation.  (Stip. at 42.)

{¶ 13}  6.  A DHO heard the application and granted Hamilton's application for TTD by order mailed June 14, 2017.  (Stip. at 43-45.)

{¶ 14}  7.  FCC appealed the DHO's grant of TTD and an SHO heard the matter on August 14, 2017.  (Stip. at 46.)

{¶ 15}  8. Concurrently with her administrative pursuit of TTD compensation, Hamilton was the object of a workplace disciplinary process initiated by her employer.  This began with a notice of pre-disciplinary meeting issued September 28, 2016.  (Stip. at 8.) The allegations involved falsification of time records resulting in excess pay.  BDD superintendent Jed W. Morison eventually issued a letter notifying Hamilton that her employment was terminated effective December 14, 2016.  (Stip. at 16.)  Hamilton unsuccessfully contested her dismissal through the contractual grievance process and before the State Personnel Board of Review.

{¶ 16}  9.  The grievance process did result in a mediation hearing on March 14, 2017, at which Hamilton agreed to a resignation in lieu of termination, with an effective date of December 14, 2016.  (Stip. at 50.)  To effectuate this agreement, the parties executed a document captioned "Resignation Form" with a BDD header.  The document states in

pertinent part as follows: "I do hereby voluntarily submit my resignation effective the end of the work day on 12/14/2016." (Stip. at 41.) It is signed by Hamilton with a signature date of "12/14/16" and by the employer representative, David Ott, with a signature date of "3/14/17." (Stip. at 41.) In her TTD proceedings, Hamilton submitted an affidavit dated August 24, 2017 clarifying that she did not sign the resignation form until the day of mediation, March 14, 2017. (Stip. at 50.) Neither the commission nor FCC dispute that this is the correct day of execution by both signatories to the resignation agreement. Hamilton does not dispute that the plain language of the resignation agreement calls for her resignation to be voluntary and effective on the earlier date but maintains that she consented to those terms under duress because her union representative urged her to resign due to the certainty of an unsuccessful outcome in her grievance process.

{¶ 17} 10. The SHO hearing on August 14, 2017 focused on FCC's assertion that Hamilton had voluntarily abandoned her employment through resignation. The SHO accepted this argument and issued an order on August 18, 2017, vacating the DHO's order and finding that voluntary abandonment of employment precluded a TTD award:

> The Injured Worker was terminated from employment by the Employer on 12/14/2016 pursuant to a progressive disciplinary process * * *. The Employer complied with the disciplinary process specified in the binding collective bargaining agreement between the Union and the Employer * * *. After a second pre-disciplinary hearing was held in the matter on 10/28/2016, it was determined there was just cause to discipline the Injured Worker (Pursuant to the collective bargaining agreement, an employee may be terminated or discharged for "just cause.") On 12/14/2016 the Employer's Superintendent issued a letter terminating the Injured Worker's employment effective as of 12/14/2016. The Injured Worker also submitted her voluntary resignation on 12/14/2016 as set forth on the "Resignation Form" she signed on said date declaring her intention to voluntarily resign effective as of the end of the work day on 12/14/2016. Subsequently, the Injured Worker submitted a grievance on 01/13/2017 contesting the Employer's 12/14/2016 termination decision. On 01/18/2017, the Employer's Director of Transportation denied the Injured Worker's grievance, finding there was evidence or just cause supporting a termination of employment. Pursuant to the collective bargaining agreement, the Injured worker filed an appeal to the Director of Transportation's determination and sought

mediation in the matter. Ultimately, after further negotiation between the parties, a solution was reached whereby the Injured Worker agreed to withdraw her grievance and voluntarily resign from employment as she had previously set forth on her 12/14/2016 Resignation Form, and the Employer accepted the Injured Worker's 12/14/2016 voluntarily [sic] resignation and agreed not to classify her departure from employment as a "termination." The Employer's signed acceptance of the Injured Worker's voluntary resignation is dated 03/14/2017.

The Hearing Officer denies temporary total disability compensation based on a finding of voluntarily [sic] abandonment. * * *

The Injured Worker voluntarily resigned her employment on 12/14/2016 as set forth on the "Resignation Form" she signed on said date declaring her intention to voluntarily resign effective as of the end of the work day on 12/14/2016. Pursuant to an agreement that was eventually reached by the parties, the Employer executed on 03/14/2017 a signed acceptance of the Injured Worker's resignation and backdated it to 12/14/2016 in accordance with the date the Injured Worker completed the "Resignation Form." * * *

The Injured Worker asserts that the effective date of her resignation should be 03/14/2017, which is the date the Employer accepted in writing the Injured Worker's resignation. However, the Employer's acceptance of resignation incorporates the 12/14/2016 "Resignation Form," and it is this specific form and the Injured Worker's voluntary resignation on 12/14/2016 that was accepted by the Employer.

For these reasons, the Injured Worker's request for temporary total disability compensation is denied.

(Stip. at 46-47.)

{¶ 18} 11. The commission refused Hamilton's appeal from the SHO's order, then refused continuing jurisdiction by order dated November 14, 2017. (Stip. at 53.)

{¶ 19} 12. Hamilton filed her complaint in the present mandamus action on August 2, 2019.

Discussion and Conclusions of Law:

{¶ 20} For this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 21} This case primarily turns on whether the commission's finding of voluntary abandonment is legally supported. The sole disputed evidentiary point is the actual date on which Hamilton signed the resignation form. The SHO went to some effort to concoct a timeline that the magistrate now rejects. Even under the lenient evidentiary standard outlined above, there is no evidence to conclude, nor reason to speculate, that the decision to have Hamilton backdate her signature from March 14, 2017 to December 16, 2016 was anything other than a clumsy belt-and-suspenders effort to entrench the effective date of her voluntary resignation on the earlier date. The magistrate will analyze the commission's order with the factual premise that Hamilton executed a document on March 14, 2017 signifying her intent to voluntarily resign her employment with an effective date of December 16, 2016.

{¶ 22} The question of law in this matter therefore presents as follows: Does an involuntary termination announced by the employer on December 16, 2016, followed by a grievance process that did not result in reinstatement and coupled with a voluntary resignation tendered by the employee on March 14, 2017 (but by its express terms made effective on December 16, 2016), preclude an award of TTD after the earlier date?

{¶ 23} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of

employment.  Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs:  (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement.  R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982); *State ex rel. Cugini v. Timken Co.*, 10th Dist. No. 18AP-261, 2019-Ohio-3013, ¶ 25. (Mag.'s Decision appended to Court's Decision.)

{¶ 24} An older line of cases from the Supreme Court of Ohio states that, when a claimant was disabled at the time of retirement or other termination of employment, the inability to work due to allowed conditions was the essential factor and overrode any facially voluntary aspect of the subsequent unemployment.  *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499; *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996).  In other words, "a claimant can abandon a former position of employment only if the claimant was physically capable of doing that job at the time of the alleged abandonment." *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, citing *Pretty Products.*  Under this line of cases, even if the abandonment appeared voluntary, there would still be a consideration of the degree of disability at the date of termination.  *Reitter Stucco* at ¶ 11, citing *Pretty Products.*

{¶ 25} More recently, the Supreme Court returned to a restrictive view of whether the allowed conditions must be the actual cause of the worker's loss of earnings.  In *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, ¶ 17, decided September 27, 2018, the Supreme Court expressly overruled its prior decisions in *Reitter Stucco* and *OmniSource* and partially overruled *Pretty Products.,* finding those decisions were unworkable in application and led to disparate results.  The Supreme Court also concluded that its prior decisions improperly contradicted the fundamental legislative tenet of eligibility for TTD compensation:  the industrial injury must be the *cause* of the worker's loss of earnings.  *Klein* at ¶ 18.  The court in *Klein* installed a bright-line test that would apply to bar TTD in cases of voluntary abandonment, without reference to the claimant's physical ability to work.  This test would apply across all circumstances, whether the purportedly voluntary abandonment of the worker's position

resulted from termination of employment for violation of work rules that clearly define a dischargeable offense, from incarceration, or from retirement. *Id.* at ¶ 19.

{¶ 26} The Ohio legislature then passed H.B. No. 81, which modified R.C. 4123.56 by adding the following entirely new language:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. *It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.*

(Emphasis added.) R.C. 4123.56(F), effective Sept. 15, 2020.

{¶ 27} The magistrate first concludes H.B. 81 does not apply to the present case, in which both the original injury and all subsequent administrative proceedings, including the filing of the present complaint in mandamus, took place before the effective date of the statute. Article II, Section 28 of the Ohio Constitution prohibits the retroactive impairment of vested substantive rights, although the General Assembly may make retroactive any legislation that is merely remedial in nature. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 9, citing *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, ¶ 13, and *State ex rel. Slaughter v. Indus. Comm.*, 132 Ohio St. 537, 542 (1937). Thus, courts apply a two-part test to evaluate whether statutes may be applied retroactively. First, the court determines as a threshold matter whether the statute is expressly made retroactive. *Consilio* at ¶ 10, citing *LaSalle* at ¶ 14. Then, if the statute is clearly intended to be retroactive, the court determines under the Ohio Constitution whether the statute is substantive or remedial and if retroactive application impairs a vested contractual right. *Consilio* at ¶ 10, citing *LaSalle* at ¶ 14; *Hope Academy Broadway Campus v. State Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 11-12.

{¶ 28} The magistrate concludes that the first factor is not met in the present case because the legislature did not clearly express an intent for the new language of R.C. 4123.56(F) to apply retroactively. The statute does specify that it is intended to supersede past judicial decisions on the question and those past decisions are, therefore, a

nullity going forward. The statute does not expressly say that it must be applied to cases currently under consideration but on facts arising before enactment of the statute or that past cases decided under former law are now wrongly decided. In the absence of such specific language, the strong presumption against retroactivity must be applied. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 9, quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

{¶ 29} Even if the statute were taken as retroactive, it would not conform to the constitutional limitation. A statute is impermissibly retroactive in effect if it takes away or impairs rights that vested or accrued before the statute came into force or it attaches a new disability in respect to past transactions or considerations. *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281 (1988). "A statutory provision that attaches a new disability to a past transaction or consideration is not invalid unless the past transaction or consideration created at least a 'reasonable expectation of finality.' " *Hope Academy* at ¶ 12, quoting *Matz* at 281. While there is little precedent addressing the question, there is no reason to doubt that an award or denial of TTD affects a substantive right. The commission decided that right under the governing law as it perceived it, Hamilton initiated the present action with similar expectations, and the parties have argued the matter accordingly. To apply new statutory law midstream would work more than a remedial change to the law.

{¶ 30} The magistrate accordingly turns to the most recent Supreme Court case, *Klein*, to ascertain whether the commission abused its discretion in denying TTD after the date of Hamilton's termination. *Klein* makes clear that the Supreme Court was eliminating the exceptions "carved out * * * to this voluntary-abandonment rule." *Klein* at ¶ 16. The court expressly overruled those aspects of *Reitter Stucco*, *OmniSource*, and *Pretty Products.* analyzing the claimant's physical capacity to work. As a result, *Klein* states that there need no longer be an inquiry, where the claimant has voluntarily abandoned the workforce, regarding whether the employee was still disabled at the date of termination. *Klein* at ¶ 16, overruling *Reitter Stucco* and *Pretty Products*.

{¶ 31} Although *Klein* was decided in September 2018, after the commission rendered its final order in the present case in July of that year, governing cases, unlike statutes, are presumed to apply retrospectively. "The general rule is that a decision of a

court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers,* 164 Ohio St. 209, 210 (1955).  The magistrate applies *Klein* to the determination that Hamilton voluntarily abandoned her employment on December 16, 2016, whether that separation occurred due to termination for cause or voluntary resignation.  The test in *Klein* prohibits TTD in all cases of voluntary abandonment and clearly covers instances of termination for cause or voluntary resignation.  *Klein* at ¶ 19.

{¶ 32}  In summary, the magistrate reaches the following conclusions of law:  first, R.C. 4123.56(F), effective September 15, 2020, is not intended to be retroactive.  Second, retroactive application of R.C. 4123.56(F) to TTD claims adjudicated by the commission before the effective date of the statute would be violative of the Ohio Constitution.  Third, application of *Klein* to the facts of this case compels a determination that the commission did not abuse its discretion in denying Hamilton's application for TTD compensation.  It is therefore the magistrate's decision and recommendation that the court deny the requested writ of mandamus.

/S/ MAGISTRATE
MARTIN L. DAVIS

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).